UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA MURRAY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:14-CV-1079

HON. PAUL L. MALONEY

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Samantha Murray seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 37 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 57, 664). She graduated high school, obtained a BA in criminal justice, and was previously employed as a certified nurse aide and a delivery worker. (Tr. 664–65, 668–69). Plaintiff applied for benefits on March 11, 2011, alleging that she had been disabled since March 7, 2007, due to back injury and

complications with her medications. (Tr. 82, 93). Plaintiff's applications were denied on May 20, 2011, after which she requested a hearing before an ALJ. (Tr. 115–24). On September 12, 2012, Plaintiff appeared with counsel before ALJ James Prothro. Plaintiff and a vocational expert (VE) testified at the hearing. (Tr. 659–92). In a written decision dated March 27, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 57–79). Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–7). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

*See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Prothro determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 62). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) lumbar DDD, (2) myofascial back pain, (3) GERD, (4) history of PTSD, (5) anxiety disorder and depressive disorder, (6) mild COPD, and (7) history of alcohol and tobacco abuse. (Tr. 63). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 64–66). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments

> to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She has the residual capacity to perform a full range of sedentary work activity. She is further limited to unskilled occupations, as well as jobs involving only occasional contact with the general public.

(Tr. 66). The ALJ also found at the fourth step that Plaintiff was unable to perform any of her past relevant work. (Tr. 71).

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d

at 964. The VE testified that there existed approximately 30,500 jobs in the state of Michigan which an individual similar to Plaintiff could perform. (Tr. 691–92). These included positions in assembly, a general office clerk, and in machine tending. (Tr. 691–92). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 7, 2007, (the alleged onset date) through March 27, 2013, (the date of the decision). (Tr. 72–73).

**DISCUSSION**

After reviewing Plaintiff's brief, the Court gleans that the Plaintiff alleges the following three errors in the ALJ's decision: (1) the ALJ erred in assessing Plaintiff's credibility, (2) the ALJ erred in discounting the opinion of Dr. Gunnell, and (3) the ALJ's Step 5 finding is without substantial evidence.[2] The Court will discuss the three issues below.

   1.   **Credibility and Medical Opinion**

Plaintiff first claims that the ALJ erred in assessing Plaintiff's credibility. The ALJ commented that Plaintiff's testimony at the hearing about her limitations was not supported by the record. (Tr. 65). After discussing the evidence in the record at length, the ALJ concluded "the undersigned finds

---

[2]Plaintiff's brief is not a model of clarity. The Court's standard order requires Plaintiff's initial brief to "contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." (Dkt. #8). Plaintiff instead presented the following single issue: "Whether the Commissioner erred as a matter of law in assessing Samantha Murray's credibility, and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray Samantha Murray's impairments." (Dkt #10, PageID 744). The argument section of the brief contains no organizational breaks or subheadings.

5

that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 71).

Plaintiff has not established that the ALJ's credibility assessment was in error. Plaintiff points to objective medical evidence supporting her medical impairments. For example, Plaintiff has degenerative disc disease and a mild disc bulge. Those impairments were acknowledged by the ALJ, who also recognized that those impairments would be expected to cause certain symptoms. That medical evidence, however, does not address the ALJ's assessment of Plaintiff's credibility with regard to the intensity, persistence, and limiting effects of her symptoms. Using Plaintiff's back as the example again, the medical evidence does not support Plaintiff's testimony that she (1) can only sit for 20 minutes and stand for 10 minutes, (2) needs to lie down for 30 to 45 minutes after working for 1 hour; and (3) would need to take 8 to 9 breaks in a typical work day. (Tr. 65). The discussion regarding credibility in Plaintiff's brief consists largely of a recitation of Sixth Circuit case law, with little explanation of how the ALJ in this specific case erred. It is not the role of this Court to develop Plaintiff's argument.

### 2. Medical Opinion

Plaintiff appears to challenge the weight the ALJ afforded to the opinion of Plaintiff's treating physician, Dr. Robert Gunnell. On August 24, 2011, Dr. Gunnell evaluated Plaintiff and concluded that, "[a]t this time I find that with her back condition as well as her PTSD that she probably is not employable. She likely will require both additional psychiatric therapy as well as surgical therapy before she can move on with her life and be gainfully employed." (Tr. 537). Dr. Gunnell used the word "disabled" to refer to Plaintiff. Finally, Dr. Gunnell completed a form in May 2012 stating that Plaintiff could only sit

for 3 hours a day, could only stand 1 to 2 hours a day, and had various limitations such as needing assistance with housework.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (*citing Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ gives less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Here, ALJ articulated good reasons for giving less than controlling weight to the opinion of Dr. Gunnell. The August 2011 statement was the first time a medical source had diagnosed PTSD and the first time a medical source had mentioned the possibility of back surgery. (Tr. 68). The limitations identified in the May 2012 form were not corroborated by the clinical notes and reflected temporary conditions including Plaintiff not using her medications and also facing "inordinate external stressors." (Tr. 68). The ALJ concluded that Plaintiff's "diminished capacity, and inability to work that Dr. Gunnell references" were not related to a change in Plaintiff's depression, anxiety, or back problems, but rather were due to Plaintiff's use of alcohol, improper use of pain and psycho-pharmaceutical medications, and additional stressors like going to jail. (Tr. 69). As a result, the deterioration in Plaintiff's functional capacity noted by Dr. Gunnell in 2012 did not "provide a realistic summary of her functional status over a long period." (Tr. 69). The ALJ then pointed to subsequent reports by Dr. Gunnell showing Plaintiff's improved functioning and the lessening of her symptoms. (Tr. 70).

Finally, the ALJ correctly noted that Dr. Gunnell's use of the word "disabled" was not a physician's statement, that is, a medical opinion. (Tr. 68). A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). While medical opinions offered by treating sources are generally accorded deference, statements that a claimant suffers from unspecified limitations or is disabled or unable to work are entitled to no deference because the determination of disability is a matter left to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Because the statement in question is not properly characterized as a medical opinion, the ALJ properly disregarded such. *See, e.g., West v. Astrue*, 2011 WL 825791 at *8 (E.D. Tenn. Jan.19, 2011) ("it was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)"); *Koller v. Astrue*, 2011 WL 5301569 at *5 (E.D. Ky. Nov.3, 2011) (the ALJ is not required to defer to statements by physicians concerning matters reserved to the Commissioner).

### 3. Step 5 determination

Plaintiff finally contests the propriety of the ALJ's hypothetical question. Plaintiff contends that the ALJ's hypothetical question posed to the vocational expert (VE) was in error because the ALJ failed to include all the severe impairments he found at step 2 in the sequential evaluation. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to

9

incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).

The record reflects that the ALJ's hypothetical question posed to the VE was consistent with the limitations as set forth in the RFC determination, which included all of the limitations that the ALJ found credible. (Tr. 690–92). The VE testified that a person with these limitations could perform 30,500 jobs in the state of Michigan. (Tr. 691–92). Plaintiff has not cited any legal or factual basis to dispute the form or substance of the ALJ's hypothetical question.

Defendant admits that the ALJ erred at step 5 by finding that Plaintiff could perform a semi-skilled job while finding that she had the RFC for only unskilled work. (Dkt. #11, PageID 766). That error, Defendant reasons, is harmless because the VE testified that there existed 30,500 unskilled jobs in the state of Michigan that Plaintiff could perform. The Court agrees. The VE's testimony that Plaintiff could perform the positions in assembly, general office clerk, and machine tending constitutes substantial evidence supporting the ALJ's finding that a significant number of jobs exist which Plaintiff could perform. (Tr. 691–92). "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Accordingly, Plaintiff's claim of error will be denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated: January 7, 2016                                         /s/ Paul L. Maloney
                                                               PAUL L. MALONEY
                                                               United States District Judge